**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARVIN THOMAS SHOEMAKER II, | No. 15-35858 |
| Plaintiff-Appellant, | D.C. No. 6:14-cv-01220-KI |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Submitted January 19, 2018[**]
San Francisco, California

Before: THOMAS, Chief Judge, and TROTT and SILVERMAN, Circuit Judges.

Marvin Thomas Shoemaker II appeals the district court's affirmance of the

Commissioner of Social Security's denial of his application for disability insurance

benefits under Titles II and XVI of the Social Security Act. We have jurisdiction

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).  We review de novo, *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016), and we affirm.

I

The Administrative Law Judge did not err in affording only "some weight" to the opinion of examining psychologist Dr. Eckstein.  Because Dr. Eckstein's examining opinion was inconsistent with other medical evidence in the record, the ALJ had to provide "specific and legitimate reasons" to reject Dr. Eckstein's opinion.[1]  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  The ALJ gave two specific and legitimate reasons for giving Dr. Eckstein's opinion "some weight."

First, the ALJ noted that the prepared form filled out by Dr. Eckstein provided only options that correlate to no limitations, marked limitations, or extreme limitations.  Because the form was limiting, the ALJ instead credited Dr. Eckstein's narrative evaluation.  An ALJ "may permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions."  *Molina*, 674 F.3d at 1111.  The ALJ reasonably characterized Dr. Eckstein's

---

[1] Shoemaker argues that the applicable standard is whether the ALJ gave "clear and convincing" reasons, *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012), because Dr. Eckstein's opinion was based on testing that the other physicians did not consider.  This argument does not have merit.  Though Dr. Eckstein employed a different method for assessing Shoemaker's psychological functioning, she sought to evaluate the same characteristics as Dr. Salbador and the agency psychologists did.

narrative evaluation as supporting moderate limitations rather than a complete inability to work.

Second, the ALJ noted that Dr. Eckstein wrote in her second evaluation that Shoemaker's situation was essentially unchanged from the year before, but inconsistently reduced his GAF score from 52 to 45. Lacking the explanation in Dr. Eckstein's supplemental letter, the ALJ gave a specific and legitimate reason for discrediting the lower GAF score.

The ALJ gave three additional reasons that are not specific or legitimate. First, the ALJ noted Shoemaker's failure to obtain psychotherapy or take his psychotropic medications. Aside from whether these observations are supported by substantial evidence, they are not a specific or legitimate reason to question Dr. Eckstein's opinion. Second, the ALJ stated that Dr. Eckstein did not attribute any of Shoemaker's cognitive deficits to marijuana, while Dr. Salbador noted that it was unclear how much, if any, of Shoemaker's anxiety was related to marijuana use. This reason is not specific or legitimate because these opinions are not inconsistent. Third, the ALJ perceived Dr. Eckstein's second opinion to be overall "less impartial and more apologetic," which is not specific or legitimate. However, these errors are harmless because the ALJ provided two legally sufficient reasons

3

supported by substantial evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## II

The ALJ did not err in assessing Shoemaker's residential functional capacity. Shoemaker alleges that the ALJ erred in making an adversity credibility assessment of his testimony. However, the RFC accommodates Shoemaker's description of his symptoms and is supported by substantial evidence. *Carmickle*, 533 F.3d at 1163. Because the ALJ's interpretation of Shoemaker's testimony is rational, the ALJ's decision must be upheld. *Molina*, 674 at 1111.

Shoemaker identifies three limitations that he alleges would be part of the RFC if the ALJ had fully credited his testimony. First, he argues that the RFC should include a need to rest or lie down at will. Shoemaker testified that when his pain is severe, he gets up and down, moves around in his seat to find a comfortable spot, and lies down quite a bit. He testified that sometimes moving around can make the pain better. A rational interpretation of this testimony is consistent with the RFC requiring "the freedom to shift in his chair at will without taking him off task."

Second, and relatedly, Shoemaker argues that the RFC should reflect that he cannot maintain attention because his pain interferes with his ability to focus or

pay attention to things. Shoemaker testified that the pain interferes with his ability to focus "quite a bit," "at least every week." However, Shoemaker has also reported that he does not have "too many difficulties with his concentration although his pain can cause him to lose focus when he is watching a show." The ALJ found that Shoemaker had moderate difficulties with concentration, persistence, and pace and limited Shoemaker to "simple, routine tasks" with "the freedom to shift in his chair at will without taking him off task." These findings are a rational interpretation of Shoemaker's self-reported limited capacity to pay attention due to his pain.

Third, Shoemaker argues that the RFC should incorporate an inability to accept instructions and respond appropriately to criticism from supervisors. The RFC reflects that Shoemaker "cannot work with the public or closely with co-workers," "cannot perform tasks as part of a team," and "is limited to ever interacting in close vicinity with more than two or three other persons." This finding is consistent with a rational interpretation of Shoemaker's testimony that he doesn't deal well with other people and that he can deal with people one-on-one but not in larger groups.

**AFFIRMED.**